UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROFESSOR ABRAHAM SOLOMON, M.D.,

                Plaintiff,

-against-

NY OFFICE OF PROFESSIONAL
DISCIPLINE; ELIZABETH CARR; DR.
GERARD BROGAN; THANIA FERNANDEZ,
ESQ.; JAMES V. McDONALD, MD MPH,

                Defendants.

25-CV-1455 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is appearing *pro se*, brings this action alleging that Defendants violated his rights when his license to practice medicine in New York State was revoked in 2001. By order dated April 2, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] For the reasons set forth below, the Court dismisses the amended complaint, but grants Plaintiff 30 days' leave to replead his claims in a second amended complaint.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

---

[1] Plaintiff filed the complaint in this action without the filing fees or an IFP application. By order dated February 26, 2025, the Court directed Plaintiff to cure this deficiency, which he did by submitting an IFP application on March 17, 2025. On March 21, 2025, without a directive from the Court, Plaintiff filed an amended complaint. The amended complaint is the operative pleading.

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff brings this action "for breach of the duties of good faith and fair dealing, suborning perjury and violation of Plaintiff's right to due process, negligence, fraud, pain and suffering and defamation." (ECF 6, at 2.) Named as Defendants are the "New York Office of Professional Discipline," which the Court understands to be the New York State Board for

Professional Medical Conduct ("BPMC"), the entity that can revoke a physician's medical license (referred to in the amended complaint as the "Board"), Elizabeth Carr, Dr. Gerard Brogan, Thania Fernandez, and James V. McDonald. The following allegations are drawn from the amended complaint.[2] Plaintiff is a physician who has practiced emergency medicine since 1986 "with no complaints from patients or hospitals." (*Id.* at 1.) On June 7, 2001, the Board revoked Plaintiff's New York medical license based on ten cases in which the Board alleged that he was negligent, grossly negligent, or incompetent, and because Plaintiff engaged in fraudulent practice. Plaintiff maintains that he never had any complaints against him, he "committed no crimes, had never abused alcohol, drugs, [or] any person sexually," that the allegations against him were "unfounded and untrue," and that he "had not committed Medicare Fraud, nor embezzled any money from anybody or organization." (*Id.* at 2-3.)

Since Plaintiff's medical license was revoked Plaintiff "has written numerous letters to the Board, Carr, and McDonald requesting an investigation of the basis for the complaints, Brogan's perjury and fraud and reinstatement of his New York Medical License." (*Id.* at 1-2.) The only response Plaintiff received was a letter from the Board dated March 11, 2025.[3]

Plaintiff asserts eight causes of action. In his first cause of action, Plaintiff claims that Defendants breached the "duty of good faith and fair dealing" because a witness, apparently Defendant Brogan, called by the Board to testify against Plaintiff "was not competent to testify in the matter and at times committed perjury concerning the medical procedures" Plaintiff performed. (*Id.* at 3.) Plaintiff further alleges that the Board never provided him with the case records for the ten cases at issue in the hearing. The Board also "favor[ed] the fraudulent and

---

[2] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

[3] Plaintiff does not describe the content of the Board's letter.

3

perjurious testimony of Brogan over the testimony of Plaintiff who had far more experience in dealing with the types of medical procedures that were the basis" of the claims against him. (*Id.* at 4.) As a second cause of action, Plaintiff accuses the Board of "suborning perjury" because it should have known that Brogan lacked credentials and "was not testifying truthfully." (*Id.*) Plaintiff believes that Brogan was paid to testify against Plaintiff as he did.

In his third cause of action, Plaintiff asserts that his due process rights were violated because the Board failed to provide him with certain documents prior to the hearing; failed to respond to his letters outlining his allegations regarding misconduct in his revocation hearing; and because he was accused of "fraudulent medical practice" without a grand jury "determin[ing] the veracity of this complaint." (*Id.* at 5.)

Plaintiff asserts, as his fourth cause of action, claims of negligence arising from Brogan's and the Board's actions during his license revocation proceedings. He alleges that Defendant Carr, whom he identifies as Chief Medical Examiner for the Board, was a "political appointee" who has "no medical training, no medical knowledge nor skills, nor practical medical experience, nor emergency medicine knowledge." (*Id.*) Plaintiff further alleges that New York Commissioner of Health McDonald was negligent "for not responding to Plaintiff's letters, initiating an investigation and not properly overseeing the conduct of the Board." (*Id.*)

Fifth, Plaintiff seeks relief for "fraud . . . perjury . . . and wrongdoing" on the part of Brogan and the Board. (*Id.* at 6.) Specifically, Plaintiff alleges that Brogan gave false testimony at Plaintiff's hearing and that "[p]erjury is a crime in New York and the Board should have informed him and cautioned Brogan about this and his testimony." (*Id.*)

Plaintiff asserts a sixth cause of action for "pain and suffering," alleging that he was injured by the Board's "fraudulent and erroneous ruling" against him and the "fraudulent and perjurious testimony of Brogan and Fernandez." (*Id.*)

In his seventh cause of action, Plaintiff asserts claims for defamation, alleging that the Board's and Brogan's actions in revoking his medical license have harmed his reputation as an emergency doctor.

Lastly, Plaintiff asserts claims for "fraud and wrongdoing" on the part of Defendant Fernandez. (*Id.*) He alleges that Fernandez is "[p]racticing [l]aw [f]raudulently" because she "suggest[ed] through her effort" that she was still a New York Health Department attorney, even though "she has been retired for about 5 years." (*Id.*) Fernandez did not use "J.D. or Esq." in her signature on a November 10, 2022 letter, but, Plaintiff maintains, "NY Department of Health Stationary has been used illegally by Fernandez to perpetuate her deliberate fraud." (*Id.*) Plaintiff further alleges that she "use[d] confidential NY Department of Health Documents that she no longer should have access to without Plaintiff's permission." (*Id.*) Plaintiff further alleges that Fernandez attempted to extort him, obstructed justice, and made "deliberately false claims" regarding Plaintiff. (*Id.* at 7.)

Plaintiff seeks $25 million in damages.

Plaintiff attaches to the amended complaint approximately 45 pages of documents, including letters of recommendation for Plaintiff from both before and after his New York license was revoked and a complaint Plaintiff filed with New York Commissioner of Health McDonald against Fernandez, Brody, Carr, and the Office of Professional Medical Conduct that largely contains the same allegations as the amended complaint in this action.

## DISCUSSION

**A.    Claims under criminal law**

Plaintiff appears to be attempting to assert claims that arise under criminal law, such as suborning perjury, practicing law without a license, criminal fraud, and obstruction of justice, However, Plaintiff cannot initiate the arrest and prosecution of an individual for criminal violations in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys or this Court to initiate a criminal proceeding against the defendants because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). The Court therefore dismisses Plaintiff's claims based on alleged violations of criminal law for failure to state a claim on which relief may be granted. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

**B.    New York State Board for Professional Medical Conduct**

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*.  The BPMC, which is a unit of the New York State Department of Health, is an "arm of the state" that is entitled to Eleventh Amendment immunity. *See, e.g.*, *Yoonessi v. New York State Bd. for Pro. Med. Conduct*, No. 03-CV-871S, 2005 WL 645223, at *10 (W.D.N.Y. Mar. 21, 2005) (holding that BPMC "is an 'arm of the state' with Eleventh Amendment immunity" and citing cases), *aff'd*, 162 F. App'x 63 (2d Cir. 2006). New York has not waived its Eleventh Amendment

immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Court therefore dismisses Plaintiff's claims against the BPMC as barred by the Eleventh Amendment.[4] *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**C.     Witness immunity**

Plaintiff's claims against Brogan appear to arise exclusively from Brogan's role as a witness in Plaintiff's disciplinary medical proceedings. Administrative proceedings, such as those before the BPMC, "function in a comparable atmosphere and adjudicate similar issues to those settled in judicial proceedings." *Arghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 299 (E.D.N.Y. 2013). The absolute immunity afforded to participants in judicial proceedings therefore also extends to individuals, including witnesses, who participate in BPMC disciplinary hearings. *See Mir v. Zucker*, No. 19-CV-6374 (CM), 2019 WL 5693695, at *7 (S.D.N.Y. Nov. 1, 2019) (dismissing claims against witness in medical disciplinary hearing on absolute immunity grounds); *Anghel*, 947 F. Supp. 2d at 300 ("[T]his absolute immunity extends to witnesses . . . who testified at the administrative hearing."); *Yoonessi*, 2005 WL 645223, at *14 (finding witnesses in BPMC hearing were entitled to absolute immunity with respect to "testimony and reports provided in connection with Plaintiff's hearing").

The Court dismisses Plaintiff's Section 1983 claims for damages against Brogan arising from Brogan's role as a witness in Plaintiff's disciplinary hearing as barred by the doctrine of absolute witness immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). To the extent Plaintiff's claims

---

[4] To the extent Plaintiff did intend to sue the New York Office of Professional Discipline, the Eleventh Amendment would also bar his claims against that entity because, as an office within the New York State Education Department, it too is an arm of the State of New York that enjoys Eleventh Amendment immunity.

against Carr, Fernandez, or McDonald also arise from their participation as witnesses in Plaintiff's medical disciplinary hearing before the BPMC, those claims are also dismissed.

**D.    Timeliness**

The only discernable federal claim Plaintiff appears to be asserting is a claim under 42 U.S.C. § 1983 that his constitutional right to due process was violated. Even if the individual defendants were not entitled to absolute immunity, any constitutional due process claim Plaintiff is attempting to assert against them appears untimely. The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Here, Plaintiff alleges that his medical license was revoked on June 7, 2001, more than 23 years before he filed this action on February 19, 2025.

The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. In addition, New York law provides that where a person "is under a disability because of . . . insanity at the time the cause of action accrues," the applicable statute of limitations will be tolled. N.Y. C.P.L.R. § 208; *Gardner v. Wansart*, No. 05-CV-3351, 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 25, 2006) (although mental illness is on its own insufficient for equitable tolling purposes,

tolling is appropriate if a plaintiff is insane at the time the cause of action accrues and is "unable to protect [his] legal rights because of an overall inability to function in society"). New York also provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.,* N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order); *id.* at § 204 (where a dispute has been submitted to arbitration but is ultimately determined to be non-arbitrable); *id*. at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity); *id.* at § 210 (death of plaintiff or defendant).

Plaintiff does not allege any facts suggesting that the statute of limitations should be equitably tolled in this case. Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (internal quotation marks and citation omitted)); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

The Court therefore dismisses any Section 1983 due process claims Plaintiff may be asserting against a non-immune defendant as untimely, and therefore, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff 30

days leave to replead his constitutional due process claims in a second amended complaint that names as a defendant a non-immune individual who denied him his right to due process, and alleges facts demonstrating that the claim is timely or that equitable tolling should apply.

**E.     State law claims**

Plaintiff asserts a variety of claims arising under state law, including negligence, defamation, fraud, and breach of the duties of good faith and fair dealing. To bring a state law claim in federal court, a plaintiff must either allege facts demonstrating that the court has diversity of citizenship jurisdiction of the action, or, if the plaintiff asserts a viable federal claim, the court can exercise supplemental jurisdiction of the state law claims.

To establish diversity of citizenship jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Here, Plaintiff alleges that he resides in the State of Florida, but he provides only employment addresses for the defendants. Even if the Court assumes that Plaintiff's state law claims meet the $75,000 threshold, he has not sufficiently alleged diversity of the parties. The Court therefore lacks diversity jurisdiction of Plaintiff's state law claims.

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal

claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int' l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

If Plaintiff files a second amended complaint that states a claim under federal law, the Court may consider Plaintiff's state law claims under its supplemental jurisdiction. If Plaintiff's second amended complaint does not state a viable federal claim, he may allege facts demonstrating that the Court has diversity of citizenship jurisdiction of his state law claims.[5]

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts sufficient to state a valid Section 1983 due process claim or allege facts

---

[5] Plaintiff should also be mindful of the timeliness of any state law claims he asserts. For example, assuming, without deciding, that New York's statutes of limitations apply, claims for negligence must be filed within three years of the date of injury, N.Y. C.P.L.R. § 214, and claims for defamation must be filed within one year, N.Y. C.P.L.R. § 215(3).

11

demonstrating that the Court has diversity jurisdiction of his state law claims, the Court grants Plaintiff **30 days' leave to amend his complaint** to cure the deficiencies identified above. If Plaintiff files a second amended complaint, it should not assert claims under criminal law or name as defendants individuals or entities that are immune from suit.

If Plaintiff does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the amended complaint for failure to state a claim and under the doctrines of Eleventh Amendment immunity and absolute immunity, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   August 11, 2025
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge